FILED

MAY - 1 2013

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCKY BOB'S INTERNET CAFÉ, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF JUSTICE; et al.,<br><br>                    Defendants. | CASE NO. 11-CV-148 BEN (JMA)<br><br>**ORDER GRANTING DEFENDANTS CALIFORNIA DEPARTMENT OF JUSTICE'S, PAT FUNE'S, AND CHRIS ESPINOZA'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR SUMMARY ADJUDICATION OF ISSUES**<br><br>[Docket No. 68] |
| STOCKTON ENTERPRISES, LLC; et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF JUSTICE, et al.;<br><br>                    Defendants. | |

Presently before the Court is Defendants California Department of Justice's, Pat Fune's, and Chris Espinoza's Motion for Summary Judgment or, Alternatively, for Summary Adjudication of Issues. (Docket No. 68.) For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs Lucky Bob's Internet Café, LLC and Stockton Déjà Vu Boutique, LLC—both internet cafes—operated a "sweepstakes." Customers were given 100 entries to the Sweepstakes for every $1 of purchased internet time. (LaBrocca Decl. ¶ 3.) In addition, each customer was entitled to 100 free entries for every 24-hour period. (*Id.*) Customers were also able to mail a request for $1 worth of sweepstakes entries to World Touch Gaming, but this option was never used. (Muscat Decl. ¶ 2, Exh. D, at 219.)

Purchased internet time was loaded onto a player card, which the customer swiped into an electronic card reader located at an assigned computer terminal. (LaBrocca Decl. ¶¶ 3-4.) The user would then select a method for revealing his winnings from the monitor located at the terminal. First, a customer could immediately reveal whether he won a prize. (*Id.* ¶ 4.) Second, a customer could play one of the seventeen casino-style games, then reveal whether he had won a prize at the end of the game. (*Id.*) Many of these casino-style games are commonly associated with slot machines. (*Id.* ¶¶ 5-9.)

Plaintiffs' equipment operated a sweepstakes gaming system that was manufactured and licensed by World Touch Gaming, Inc. (*Id.* ¶ 3.) The World Touch Gaming system predetermined prize outcomes based upon chance as set forth in pre-defined odds tables for the gaming system, prior to when customers revealed their game entries on player terminals. (*Id.* ¶ 11.) Based upon the odds tables, a game's overall financial outcome would be set at the time the pool of outcomes was generated. (*Id.*) The system would then sequentially assign entries to patrons from the pool. (*Id.*) Playing the casino-type games could not change the game entries' prize values. (*Id.*)

For every pool of 20 million game entries distributed by the World Touch Gaming database, there were a total of 433,412 winning game entries with cash prizes ranging from 10 cents to $3,000. (*Id.* ¶ 12.) There was a prize payout return rate to customers of approximately 94.05% remaining in the pool for the system at Déjà Vu,

and 94% remaining in the pool for the system at Lucky Bob's. (*Id.* ¶ 13.) Players at both Lucky Bob's and Déjà Vu did not use the vast majority of internet time they purchased. (Kaseno Decl. ¶¶ 4-5.) At Lucky Bob's, a total of $1,225,055 was spent for 204,176 hours of internet time and 97.375% of the total purchased internet time was unused. (*Id.* ¶ 4.) At Déjà Vu, a total of $12,916,254 was spend for 2,152,709 hours of internet time and 99.735% of the total purchased internet time was unused. (*Id.* ¶ 5.)

The Bureau of Gambling Control, a bureau within the Department of Justice's Division of Law Enforcement, and local law enforcement investigated Plaintiffs. On June 24, 2009, Bureau of Gambling Control agents and local law enforcement seized and removed computers, servers, monitors, and related equipment at Déjà Vu. (Espinoza Decl. ¶¶ 3-12.) The Bureau of Gambling Control also assisted local law enforcement in the investigation and seizure of equipment at Lucky Bob's on June 24, 2009. (Fune Decl. ¶¶ 3-7.) Defendants contend that the sweepstakes constituted unlawful illegal slot machines under the California Penal Code.

Plaintiffs originally filed suit in state court. This action was removed on January 24, 2011. (Docket No. 1.) The Fourth Amended Complaint (the operative complaint) alleges seven claims: (1) injunctive relief (sweepstakes complies with state law) against all defendants; (2) declaratory relief (sweepstakes complies with state law) against all defendants; (3) declaratory relief (violation of First Amendment / property return) against all defendants; (4) injunctive relief (future First Amendment violation / property return) against all defendants; (5) declaratory relief (statutory vagueness / property return) against all defendants; (6) injunctive relief (future statutory violation / property return) against all defendants; and (7) damages (violation of constitutional rights) against Defendants Pat Fune, Chris Espinoza, and Brent Keys. (Docket No. 31.)

Presently before the Court is Defendants California Department of Justice's, Pat Fune's, and Chris Espinoza's Motion for Summary Judgment or, Alternatively, for Summary Adjudication of Issues. (Docket No. 68.)

///

## DISCUSSION

Summary judgment must be granted where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Defendants California Department of Justice, Pat Fune, and Chris Espinoza move for summary judgment on all claims.

I. **CLAIM 1: INJUNCTIVE RELIEF THAT SWEEPSTAKES COMPLIES WITH STATE LAW AND CLAIM 2: DECLARATORY RELIEF THAT SWEEPSTAKES COMPLIES WITH STATE LAW**

The first claim seeks injunctive relief because the Sweepstakes complies with state law. The second claim seeks declaratory relief that the Sweepstakes complies with state law. These claims allege that the Sweepstakes complies with state law, and therefore, the seized equipment should be returned.

California Penal Code § 330b finds a device to be a gambling device or slot machine if "[b]y the insertion of money and purely by chance (without any skill whatsoever), the user may receive or become entitled to receive money." *People ex rel. Lockyer v. Pacific Gaming Techs.*, 82 Cal. App. 4th 699, 703 (2d Dist. 2000). Relying on Sections 330b and 330.1, *Trinkle v. California State Lottery* held that "the elements of a slot machine are (1) the insertion of money or other object which causes the machine to operate, (2) the operation of the machine is unpredictable and governed by chance, and (3) by reason of the chance operation of the machine, the user may become entitled to receive a thing of value." 105 Cal. App. 4th 1401, 1410 (3d Dist. 2003). A slot machine must have all three elements. *See id.*

Here, the World Touch Gaming system constitutes an illegal gambling device under Section 330b. First, the insertion of money or other object caused the machines

to operate. Customers operated the system by depositing cash into a sales terminal and receiving a coded card linked to the customer's game entries that could be revealed on a player terminal by swiping the card in the card reader. (LaBrocca Decl. ¶ 4.)

Plaintiffs argue that there could be no loss of money or other valuable thing attributable to the sweepstakes operation on the computer system because customers did not deposit any money or other consideration into the machines. As explained above, however, a customer swiped the pre-paid coded card loaded with the purchased internet time into a computer terminal to operate the machine. This constituted "the insertion of money *or other object* which causes the machine to operate."

Moreover, the fact that sweepstakes entries were free with the purchase of internet time does not change this result. The consideration element is satisfied when some customers by chance receive more than what they paid for. *Lockyer*, 82 Cal. App. 4th at 707. Once the elements of chance and prizes are added, the consideration paid is no longer solely for internet time. Paying for the chance to win money, rather than the use of internet time, may be the customer's main focus. *See Trinkle v. Stroh*, 60 Cal. App. 4th 771, 785-86 (3d Dist. 1997).

Second, the operation of the machines is unpredictable and governed by chance. The World Touch Gaming system provided customers with opportunities to win cash prizes in a manner that was unpredictable to the player. (LaBrocca Decl. ¶¶ 11-12.) The customers could not control or predict the distribution of cash prizes. (*Id.* ¶ 11.)

Plaintiffs argue that the operation of the machines was predictable because the sweepstakes entry results are sequenced in a pre-determined order, block loaded to the customer's account, and revealed to the customer sequentially. Plaintiffs compare the machines at issue here with the vending machine at issue in *Trinkle*. In *Trinkle*, a vending machine dispensed lottery tickets sequentially, which the court held made its operation predictable. 105 Cal. App. 4th at 1411. There, however, the vending machine simply delivered the finished product—the lottery ticket. Plaintiffs' operating system can be distinguished from the vending machine in *Trinkle* by the integrative

nature of its components. Here, the sweepstakes winnings necessarily involved the "value added" of each component of Plaintiffs' integrative system—from the computers that read the magnetic strip card; the database server controlling the games; and the point of sale computer that allowed the employee to create the accounts, add internet time and sweepstakes entries and play out redeemed entries.

The system here is more similar to the vending machines at issue in *Lockyer*. In *Lockyer*, the vending machines dispensed pre-paid telephone cards, but also had a sweepstakes feature that randomly paid out money after playing visual and audio displays that mimicked a slot machine. *Id.* at 701-03. Winners were determined by a preset computer program, which decided "predetermined winners spread out over a period of time." *Id.* at 702 & n.4. The court in *Lockyer* held that the vending machine was an illegal slot machine under Section 330. *Id.* at 707.

In addition, Plaintiffs argue that the casino-style games did not create an element of chance because the games had no impact on whether a customer received a sweepstakes prize. Even if the machines did not display the casino-style games before revealing whether the customer had won, the operation of the machine was still "unpredictable and governed by chance," as explained above.

Third, customers became entitled to receive a thing of value by reason of the chance operation of the machine. Because customers could receive cash prizes of up to $3,000, the World Touch Gaming system provided them with the opportunity to win a "thing of value."

Plaintiffs argue that even if the element of chance were present, the World Touch Gaming system is lawful because it is missing the element of consideration.[1] While lack of consideration is a possible defense in lottery cases under California Penal Code § 319, it is not a defense in gambling device actions brought under Section 330b. *Trinkle*, 60 Cal. App. 4th at 780-81.

---

[1] Defendants object to Professor I. Nelson Rose's Expert Opinion Report presented by Plaintiffs. (Docket No. 76-1.) Because the Court does not rely on the Expert Opinion Report, Defendants' objection is **OVERRULED** as moot.

Plaintiffs' network of machines qualify as slot machines under Section 330b. As this issue is dispositive, the Court will not consider whether the network of machines qualify as an unlawful lottery under California Penal Code § 319. In addition, because the Court determines that the network of machines at issue here qualify as slot machines, Plaintiffs' claim for return of property necessarily fails. Accordingly, summary judgment is **GRANTED** in favor of the California Department of Justice, Fune, and Espinoza on the first and second claims.

## II.   THIRD CLAIM: DECLARATORY RELIEF FOR VIOLATION OF FIRST AMENDMENT / PROPERTY RETURN AND FOURTH CLAIM: INJUNCTIVE RELIEF FOR FUTURE FIRST AMENDMENT VIOLATION / PROPERTY RETURN

The third claim seeks declaratory relief for violation of the First Amendment and property return. The fourth claim seeks injunctive relief for future First Amendment violation and property return. These claims are based on the allegation that Defendants' interference with Plaintiffs' Sweepstakes was a "total ban on an entire medium of expression by suppressing access to, and display of, all constitutionally protected content as a consequence of overzealous efforts to eradicate access to, and display of, content purportedly related to unlawful gambling without compelling or substantial government interest." (FAC ¶ 30.)

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "The Constitution . . . affords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993).

Defendants did not violate the First Amendment rights of Plaintiffs. According to Plaintiffs, Plaintiffs' internet access, video games, computer codes, computer algorithms, and computer programs were all protected by the First Amendment. Plaintiffs argue that because the seizure of the computer equipment constituted a prior restraint on prospective communication, the seizure should have been preceded by an

adversary hearing regarding possible gambling. In support of this proposition, Plaintiffs cite *Roaden v. Kentucky*, 413 U.S. 496 (1973), *Heller v. New York*, 413 U.S. 483 (1973), *A Quantity of Books v. Kansas*, 378 U.S. 205 (1964), and *Marcus v. Search Warrant*, 367 U.S. 717 (1961).

This line of cases, however, applies only when a seizure was made on the basis of content. *See New York v. P.J. Video, Inc.*, 475 U.S. 868, 873 (1986) ("We have long recognized that the seizure of films or books on the basis of their content implicates First Amendment concerns not raised by other kinds of seizures."). Plaintiffs do not allege that the seizure was based on any content related animus, as required. In addition, Plaintiffs do not allege that the equipment was seized to prevent Plaintiffs or its costumers access to the internet or because of the messages distributed via the internet.

Defendants did not violate the First Amendment rights of Plaintiffs. Accordingly, summary judgment is **GRANTED** in favor of the California Department of Justice, Fune, and Espinoza on the third and fourth claims.

### III. FIFTH CLAIM: DECLARATORY RELIEF FOR STATUTORY VAGUENESS / PROPERTY RETURN AND SIXTH CLAIM: INJUNCTIVE RELIEF FOR FUTURE STATUTORY VIOLATION / PROPERTY RETURN

Plaintiffs allege that Section 330a is unconstitutionally vague both on its face and as applied. (FAC ¶¶ 25, 54, 58.) Specifically, Plaintiffs allege that key phrases such as "slot machines" and "staked or hazarded" are not defined in Section 330a, and the descriptions provided in related gaming statutes are insufficient. (FAC ¶ 26.)

To prove that Section 330a is unconstitutionally vague, Plaintiffs must show that the statute "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Davis*, 36 F.3d 1424, 1434 (9th Cir. 1994).

Section 330a(a) states:

Every person, who has in his or her possession or under his or her control,

either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance, and every person, who has in his or her possession or under his or her control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any card dice, or any dice having more than six faces or bases each, upon the result of action of which any money or other valuable thing is staked or hazarded, or as a result of the operation of which any merchandise, money, representative or article of value, check or token, redeemable in or exchangeable for money or any other thing of value, is won or lost or taken, when the result of action or operation of the dice is dependent upon hazard or chance, is guilty of a misdemeanor.

On its face, Section 330a is not unconstitutionally vague. "[W]e have not traditionally subjected every criminal and civil sanction imposed through legal process to 'least restrictive means' scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). Traditionally, restrictions will apply only when: (1) it involved "conduct with a significant expressive element that drew the legal remedy in the first place," or (2) "where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706-07.

Here, Section 330a does not implicate the First Amendment, but implicates only gambling. Section 330a is one part of an overall state statutory scheme to control gambling. *See* CAL. PENAL CODE ch. 10. It is not enough for Plaintiffs to allege that some First Amendment activity was limited. Because Section 330a does not implicate First Amendment protection, there can be no viable claim asserted on the basis that it is void for vagueness on its face. *United States v. Rodriguez*, 360 F.3d 949, 953 (9th

Cir. 2004).

As applied, Section 330a is not unconstitutionally vague. Plaintiffs argue that Section 330a consists of a "lengthy and convoluted" sentence, and that the terms "slot machine" and "staked" or "hazarded" are not defined. That Section 330a consists of a single, long sentence does not by itself make the statute unconstitutionally vague. In addition, Section 330a is one part of an overall state statutory scheme to control gambling. *See* CAL. PENAL CODE ch. 10. The varying sections address slot machines, other gambling devices, and gambling related endeavors. Multiple code sections within Chapter 10 are available to give Plaintiffs guidance regarding "slot machines" and whether Plaintiffs' Sweepstakes is illegal gambling. "The existence . . . of more than one statute potentially applicable to particular conduct does not create an unconstitutionally indefinite standard of proscribed conduct." *Merandette v. City & Cnty. of San Francisco*, 88 Cal. App. 3d 105, 112 (1st Dist. 1979).

Accordingly, Section 330a is not unconstitutionally vague, either on its face or as applied. Summary judgment is **GRANTED** in favor of the California Department of Justice, Fune, and Espinoza on the fifth and sixth claims.

## IV.  SEVENTH CLAIM: DAMAGES FOR VIOLATION OF CONSTITUTIONAL RIGHTS

The seventh claim seeks damages for violation of constitutional rights. 42 U.S.C. § 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. However, "government officials are entitled to some form of immunity from suits for civil damages." *Nixon v. Fitzgerald*, 457 U.S. 731, 744 (1982). To determine whether qualified immunity protects individual law enforcement officers from liability, a court determines: (1) whether the alleged facts show that the officer's conduct violated a constitutional right; and (2) whether a constitutional right was clearly established in the particular context of the case. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Courts may omit the first *Saucier* step and focus only on the second step. *Pearson v. Callahan*, 555 U.S. 223,

242 (2009).

The relevant inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted). The "salient question" is whether the state of the law gave law enforcement officers fair warning that their actions were unconstitutional. *Id.* at 741. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted).

Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate issued the warrant is an indication that the officers acted with "objective good faith." *United States v. Leon*, 468 U.S. 897, 922-23 (1984). An exception allowing suit has been recognized when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The shield of immunity will be lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

Here, Oceanside Police Detective Brent Keys was reasonable in his investigation and had an objectively reasonable belief that illegal gambling activity was occurring at Lucky Bob's. Keys performed an extensive and well-documented investigation that spanned approximately seven months. (Keys Criminal Trial Testimony at 164.) Keys first became aware of potential gambling activity due to a confidential informant. (Keys Dep. at 34-37.) He then entered Lucky Bob's and observed first-hand the

computer terminals. (Keys Criminal Trial Testimony at 137-38.) Keys used the machines on at least three occasions. (*Id.* at 139-42.) He obtained a player card, set up an account, and played the games. (*Id.*)

Keys conferred with the Bureau of Gambling Control and worked with the California Department of Justice agents. (Keys Dep. at 20-22, 186-87, 190-92.) He spoke with the City's licensing department and learned about the City's zoning policies. (*Id.* at 130-32, 135-36.) Before presenting his investigation to the court, Keys presented the affidavit to a Deputy District Attorney, who interviewed Keys and approved the affidavit in writing. (Keys' Mot., Exh. 8.) While executing the warrant, Keys took only those items specified in the warrant and otherwise acted appropriately. (*Id.*, Exhs. 9-11, 15-21.)

First, Plaintiffs argue that Keys misrepresented two facts in his affidavit to the magistrate when seeking the warrant: (1) that craps games were played on the premises; and (2) that the machines were operated by currency and some of the machines provided credit slips when the operators won. Keys does not dispute these two statements are false. (Keys' Reply at 7.) Nevertheless, these errors were harmless. Although craps games were not played on the premises, eighteen different types of casino games were played. (Keys' Mot., Exhs. 8, 9.) Advertising on the premises displayed various gambling games and paraphernalia, including dice and poker chips and the exchange of money to purchase and redeem credits. (*Id.*) In addition, because there remains sufficient content in the affidavit to support probable cause despite the two misstatements, Keys' actions are protected by qualified immunity. *See Forster v. Cnty. of Santa Barbara*, 896 F.2d 1146, 1147-48 (9th Cir. 1990).

Second, Plaintiffs argue that at the time of seizure, a reasonable officer in the position of Keys, Fune, or Espinoza would have understood that the seizure of the computer equipment would disrupt a business engaged in First Amendment activity, and constitute a prior restraint which must be preceded by an adversary hearing. As determined above, however, the seizure of Plaintiffs' equipment did not violate

Plaintiffs' First Amendment rights.

The Court finds that Fune and Espinoza acted reasonably and had a good faith and reasonable belief that their actions were within the parameters of the law. They are entitled to qualified immunity. Accordingly, summary judgment is **GRANTED** in favor of Fune and Espinoza on the seventh claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment or, Alternatively, for Summary Adjudication of Issues is **GRANTED**. Summary judgment is granted in favor of the California Department of Justice on the first, second, third, fourth, fifth, and sixth claims. Summary judgment is granted in favor of Fune and Espinoza on the first, second, third, fourth, fifth, sixth, and seventh claims.

**IT IS SO ORDERED.**

DATED: 5/01/13

HON. ROGER T. BENITEZ
United States District Court Judge